IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| BOARD OF COUNTY COMMISSIONERS OF SANDOVAL COUNTY, NEW MEXICO,<br><br>      Plaintiffs,<br>vs.<br><br>FIRST UNION SECURITIES, as successor-in-interest to Everen Securities, and ROYCE O. SIMPSON,<br><br>      Defendants. | No. CIV 01-0120 PK/WWD |

MEMORANDUM OPINION AND ORDER

THIS MATTER comes on for consideration of Defendants' (First Union Securities ("First Union") and Royce O. Simpson's) Motion to Dismiss Count III of Plaintiff's Second Amended Complaint, filed July 24, 2001 (Doc. 32). Count III alleges that Defendants' conduct violated the New Mexico Unfair Practices Act, N.M. Stat. Ann. § 57-12-3 (Michie Repl. 1997). Second Amended Complaint ¶¶ 43–45 at 19 (Doc. 23). The court, being fully advised in the premises, finds that the motion to dismiss is well taken for the reasons discussed herein, and should be granted.

Background

Plaintiff, the Sandoval Board of County Commissioners, is charged with overseeing the investment of funds not immediately necessary for government purposes. Second Amended Complaint, ¶¶ 5-6 at 2. Plaintiff alleges that between July 1997 and April 1999, Defendant Royce Simpson, an Everen Securities account executive, sold the Sandoval County Treasurer, eighteen Treasury strips with maturities of up to twenty-five years and with an aggregate principal value in excess of $50,000,000. Id. ¶¶ 8-9 at 3. When a Treasury security is stripped, each interest payment and the principal payment becomes a separate zero-coupon security. Bureau of the Public Debt Online, Treasury STRIPS, available at http://www.publicdebt.treas.gov/of/ofstrips.htm (visited April 25, 2001). At maturity, the investor receives a fixed payment. Id.

Plaintiff contends that the Treasury strips were unsuitable investments. Plaintiff claims actual losses (as of September 30, 2000) in excess of $100,000. Id. ¶¶ 30-31, at 16. It also claims $300,000 interest forgone. Id. ¶ 31 at 16. Plaintiff further alleges that in a series of telephone conversations between July, 1997, and November, 1998, Simpson omitted to disclose material facts to the Treasurer each time Everen sold a Treasury strip to the County. As to each sale, Plaintiff claims that Simpson failed to disclose the following information about the Treasury strips: (1) they would not earn periodic interest; (2) they are interest rate and market sensitive, thereby putting principal at risk; (3) the County would have to hold them until maturity to receive the full principal value

of the investment; and (4) they were unsuitable for money that might be needed for governmental operations.

In Count I, Plaintiff alleges securities fraud based upon § 10(b) of the 1934 Act, 15 U.S.C. § 78j(b) and Rule 10b-5, 17 C.F.R. § 240.10b-5. Second Amended Complaint, ¶ 36 at 17. In Count II, Plaintiff alleges violations of the New Mexico Securities Act, N.M. Stat. Ann. §§ 58-13B-30(A)–(C). Id. ¶¶ 39–42 at 18–19. Plaintiffs further allege that Everen is liable for failure to supervise Defendant Simpson. Id. Plaintiffs also have three supplemental state-law claims. At issue here is Count III, which alleges that the Defendants violated the New Mexico Unfair Trade Practices Act, N.M. Stat. Ann. §§ 57-12-3 (Michie Repl. 1997).

Discussion

In considering a motion to dismiss for failure to state a claim, a court accepts as true all allegations in the complaint and draws all reasonable inferences in the plaintiff's favor. Swanson v. Bixler, 750 F.2d 810, 813 (10th Cir. 1984). Unless it appears beyond doubt that the plaintiff can prove no set of facts supporting the claim that would entitle it to relief, the court should deny the motion to dismiss. H.J., Inc. v. N.W. Bell Tel. Co., 492 U.S. 229, 249–50 (1989). The issue in reviewing the sufficiency of a complaint is not whether the plaintiff will ultimately prevail, but whether the plaintiff is entitled to offer evidence to support the claim. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), overruled on other grounds as recognized by Davis v. Scherer, 468 U.S. 183, 191 (1984).

The Defendants move to dismiss Count III, the alleged violation of the New Mexico Unfair Practices Act ("UPA"), on two grounds. Defendants first assert that the UPA contains an exemption clause specifically excluding sales of securities from the reach of that act. N.M. Stat. Ann. § 57-12-7 (Michie Repl. 1997). For their second ground, the Defendants maintain that securities do not constitute "goods or services" as contemplated by the UPA, id. §§ 57-12-2(D)–(E), and the UPA therefore does not reach the Defendants' alleged misconduct.

Beginning with the Defendants' second ground, the court begins by looking at the relevant statute. The UPA makes unlawful "[u]nfair or deceptive trade practices and unconscionable trade practices." Id. § 57-12-3. The UPA defines an "unfair or deceptive trade practice" as

> any false or misleading oral or written statement, . . . or other representation of any kind knowingly made in connection with the sale . . . of goods or services . . . by any person in the regular course of his trade or commerce, which may, tends to or does deceive or mislead any person . . . .

Id. § 57-12-2(D). The UPA defines "unconscionable trade practice" as

> any act or practice in connection with the sale . . . or in connection with the offering for sale . . . of any goods or services . . . which to a person's detriment: (1) takes advantage of the lack of knowledge, ability, experience or capacity of a person to a grossly unfair degree; or (2) results in a gross disparity between the value received by a person and the price paid.[1]

---

[1] The legislature amended this provision, effective June 18, 1999, by adding the words "including services provided by licensed professionals" after the clause "any goods or services" in the above-quoted statutory language. N.M. Stat. Ann. § 57-12-2(E) (Michie Supp. 2000).

Id. § 57-12-2(E)(1)–(2).

For the statute to apply, then, the transaction or transactions complained of must be "in connection with" a sale or offer to sell "goods or services." The Defendants rely heavily on Greene v. Horizon/CMS Healthcare Corp., Civ. No. 97-114 JP/DJS, 1998 LEXIS 12254 (D.N.M. July 13, 1998), where the court concluded that the "sale of stock is neither a good nor a service." 1998 LEXIS 12254 at *28. As a result, the court found that the plaintiffs could not allege an "unfair trade practice" or "unconscionable trade practice" under the UPA. Id.

The Greene case, however, involved a claim slightly different from that made by the County in this case. In Greene, the plaintiffs alleged violations of federal and state securities laws based entirely on Horizon/CMS Healthcare's falsely inflated earnings reports. Id. at *1. Thus, Greene did not involve any kind of direct buyer-seller relationship and the court found the UPA did not apply. In this case, however, the Board's claim goes directly to Defendant Simpson's alleged material misstatements made to induce the Treasurer to purchase the Treasury Strips. As such, this court declines to accept Greene's sweeping language that the "sale of stock is neither a good nor a service" in this factually distinguishable setting. See Algrant v. Evergreen Valley Nurseries, Ltd., 126 F.3d 178, 187–88 (3d Cir. 1997) (stating that for the Pennsylvania Unfair Practices Act to apply to a securities transaction, the fraud must relate to the actual sale and not the specific security); Nottingham v. Gen. Am. Communications Corp., 811 F.2d 873, 878 (5th Cir. 1987) (same conclusion under Texas Deceptive Trade Practices statute).

Defendants claim alternatively that transactions in securities are exempted from application of the UPA. The UPA contains an exemption provision stating, "[n]othing in the [UPA] shall apply to actions or transactions expressly permitted under laws administered by a regulatory body of New Mexico or the United States."[2] N.M. Stat. Ann. § 57-12-7 (Michie Repl. 1997). The New Mexico Supreme Court has never ruled on whether the provision exempts securities transactions from the reach of the UPA.[3] When no decision of a state's highest court has addressed an issue of that state's law, the federal court confronted with that issue "must predict how [the State's] highest court would rule." FDIC v. Shuchmann, 235 F.3d 1217, 1225 (10th Cir. 2000). In doing so, the federal court is "free to consider all resources available, including decisions of New Mexico courts, other state courts and federal courts, in addition to the general weight and trend of authority." Id. (citing Wood v. Eli Lilly & Co., 38 F.3d 510, 512 (10th Cir. 1994)).

---

[2] The legislature also amended this provision, effective June 18, 1999, by adding the following to the end of the above-quoted statutory language: "but all actions or transactions forbidden by the regulatory body, and about which the regulatory body remains silent, are subject to the [UPA]." N.M. Stat. Ann. § 57-12-7 (Michie Supp. 2000).

[3] In one case, the Supreme Court of New Mexico did provide at least implicit approval of a plaintiff obtaining recovery under both the New Mexico Securities Act and the UPA. See Segal v. Goodman, 851 P.2d 471, 474 (N.M. 1993) (court noting judgment entered against defendants for violations of Securities Act and UPA). The case included no discussion, however, on whether the exemption under § 57-12-7 applies. In addition, that case, unlike this one, apparently involved no alleged violation of the federal securities laws.

Only two New Mexico cases have addressed the scope of § 57-12-7.  In Ashlock v. Sunwest Bank of Roswell, 753 P.2d 346 (N.M. 1988), overruled on other grounds by Gonzales v. Surgidev Corp., 899 P.2d 576, 583 (N.M. 1995), the Supreme Court of New Mexico held that the exemption did not apply in a case where a plaintiff sued a bank to recover interest due on an interest-bearing account which the bank failed to pay. Ashlock, 753 P.2d at 348.  The defendant bank claimed the exemption applied because a federal statute directed the Board of Governors of the Federal Reserve System to regulate banks to prevent unfair trade practices.  Id. at 349.  The court rejected this argument, stating that its "attention has not been directed to any federal statute or regulation that would evidence the intention of Congress or the federal regulatory branch to regulate, to any extent, the bank's failure to deliver goods or services as promised." Id.  Thus, for the exemption to apply, the New Mexico Supreme Court seemingly requires at least some legislation or regulation directed at the same type of activity for which a plaintiff alleges a violation of the UPA.

In N.M. ex. rel. Stratton v. Gurley Motor Co., 737 P.2d 1180 (N.M. Ct. App. 1987), the New Mexico Court of Appeals addressed whether the exemption applied to the activities of a car dealer who allegedly engaged in illegal insurance premium rebates. Similar to the court in Ashlock, the Stratton court stated that the exemption "require[s] more than the mere existence of a regulatory body" to avoid application of the UPA. Stratton, 737 P.2d at 1184.  Instead, "the regulatory body must render permission to engage in the business of the transaction through licensing, registration or some similar

manifestation of 'permitting' the business activity." Id. Thus, because the car dealer was not a licensed insurance broker, it could not validly claim that the New Mexico Unfair Insurance Practices Act (UIPA) "permitted" its insurance sales activities and the UPA exemption did not apply. Id. at 1185. The court did determine in Stratton, however, that the legislature "did not intend to make the UIPA the exclusive remedy under state law for conduct prohibited in [the UIPA]." Id. at 1183. In making this determination, the court relied heavily on the fact that the UIPA provides primarily administrative enforcement remedies, while the UPA provides "distinct compensatory elements" to the injured person. Id.

Although federal courts in this district have addressed the scope of the exemption under the UPA, none has addressed whether the exemption precludes alleged violations of securities laws. In Campos v. Brooksbank, 120 F. Supp. 2d 1271 (D.N.M. 2000), Judge Parker analyzed whether the exemption applied to claims that were also actionable under the federal Fair Debt Collection Practices Act, 15 U.S.C. § 1692k(d). Judge Parker construed Stratton as creating a two-part test to determine whether a particular activity is exempt from the UPA:

> the New Mexico Court of Appeals requires a showing that (1) the defendant's activities generally are subject to regulation by an appropriate state or federal agency and (2) the specific activity which would otherwise constitute a violation of the [UPA] is in fact "permitted" by the applicable law or regulation.

Campos, 120 F. Supp. 2d at 1276 (internal quotation omitted).

Applying this test, Judge Parker concluded that although the defendant attorney's filing of affidavits was "permitted" by the Supreme Court of New Mexico, thereby meeting the first part of test, the UPA exemption did not apply to alleged misrepresentations in those filings. Id. at 1278. The alleged misrepresentations in the otherwise sanctioned filings precluded the affidavits from meeting the definition of a "permitted" activity. Id. Other decisions in this district have applied a similar analysis, see, e.g., Am. Indian & Alaska Native Cultural & Arts Dev. Inst. v. Daymon & Assoc., No. CIV 98-1192 JC/WWD, 1999 U.S. Dist. LEXIS 22380, at *6–7 (D.N.M. June 23, 1999) (exemption not applicable to failure of accountant to deliver services); Kolker v. Sanchez, No. CIV 90-1082 JP, 1991 U.S. Dist. LEXIS 20783, at *15–16 (D.N.M. Dec. 10, 1991), while others have interpreted the exemption more broadly. See, e.g., Lopez v. Am. Airlines, Inc., No. 92-1444-M Civil, 1993 U.S. Dist. LEXIS 21344, at *15–16 (D.N.M. Dec. 10, 1993) (regulation of airlines sufficient for exemption to apply).

Most of the state courts that have considered this issue have found that acts similar to the New Mexico UPA do not apply to securities transactions. See, e.g., Russell v. Dean Witter Reynolds, Inc., 510 A.2d 972, 979 (Conn. 1986) (applying Connecticut law); Cabot Corp. v. Baddour, 477 N.E.2d 399, 402 (Mass. 1985) (applying Massachusetts law), superseded by statute, Mass Gen. Laws ch. 93A, § 1(b); Skinner v. E.F. Hutton & Co., 333 S.E.2d 236, 241 (N.C. 1985) (applying North Carolina law); South Carolina. v. McLeod, 267 S.E.2d 539, 541 (S.C. 1980) (applying South Carolina law); Rhode Island v. Piedmont Funding Corp., 382 A.2d 819, 821–22 (R.I. 1978) (applying Rhode Island

law).  But see Arizona ex rel. Corbin, 667 P.2d 1304, 1307 (Ariz. 1983) (finding Consumer Fraud Act applicable to securities transactions based upon subsequent legislative amendment), superseded on other grounds by statute, A.R.S. section 13-2314(A).  It is significant to note that the New Mexico Court of Appeals cited the Piedmont case from Rhode Island with approval.  Stratton, 737 P.2d at 1184–85.  The majority of federal courts confronted with other state consumer protection statutes have also ruled that such acts do not apply to securities transactions.  See Wyman v. Prime Discount Sec., 819 F. Supp. 79, 87 & n.14 (D. Me. 1993) (collecting cases and finding Maine Unfair Trade Practices Act inapplicable to securities transactions).

　　　　The court, having considered the relevant decisions of the courts of New Mexico, decisions of the courts in the United States District of New Mexico, other state and federal cases, and the underlying purposes of the UPA, concludes that the Supreme Court of New Mexico would rule that the exemption under § 57-12-7 precludes a plaintiff from bringing an action under the UPA in relation to a securities transaction.  The court finds it persuasive that both the federal securities laws and the New Mexico Securities Act provide comprehensive remedial schemes for private litigants.  See 17 C.F.R. § 240.10b-5; N.M. Stat. Ann. § 58-13B-40 (Michie Repl. 1997).  As the New Mexico Court of Appeals indicated in Stratton, the existence of such remedial schemes is a significant factor in determining that the legislature did not intend to extend the provisions of the UPA to securities transactions.  737 P.2d at 1183.  While the recent amendments to the UPA might indicate that securities transactions are now within its ambit, the Supreme

Court of New Mexico follows a presumption against applying amended statutes retroactively, see Wasko v. N.M. Dep't of Labor, 879 P.2d 83, 85–86 (N.M. 1994) (internal citations omitted), and presumably the statute was amended to effect a change in meaning. Further, the clear majority of state and federal courts that have addressed similar exemption clauses in state unfair trade practice acts have concluded that such acts do not apply to securities transactions. In sum, the court concludes that the statutory exemption under § 57-12-7 precludes the Plaintiff from seeking recovery under the UPA for the alleged securities violations. As a result, the Plaintiff can prove no set of facts in this case that would entitle it to recovery under the UPA.

NOW, THEREFORE, IT IS ORDERED, ADJUDGED AND DECREED that Defendants' Motion to Dismiss Count III of Plaintiff's Second Amended Complaint, filed July 24, 2001 (Doc. 32) is granted.

DATED this 19th day of October, 2001 at Santa Fe, New Mexico.

*Paul Kelly Jr.*
United States Circuit Judge
Sitting by Designation

Counsel:

Robert M. Strumor, Hughes & Strumor, Ltd. Co., Albuquerque, New Mexico, for Plaintiff.

Melanie L. Frassanito and W. Spencer Reid, Keleher & McCleod, P.A., Albuquerque, New Mexico, and William D. Nelson, Frederick J. Baumann, Christopher T. Sullivan, Rothgerber Johnson & Lyons LLP, Denver, Colorado, for Defendants.