BOARD OF COUNTY COMMISSIONERS OF SANDOVAL
COUNTY, NEW MEXICO,

    **Plaintiff,**

VS.

    CASE NO. CIV 01-0120 PK/WWD

FIRST UNION SECURITIES AS SUCCESSOR IN
INTEREST TO EVEREN SECURITIES AND ROYCE O.
SIMPSON,

    **Defendants.**

**PLAINTIFF'S REQUESTED FINDINGS OF FACT AND CONCLUSIONS OF LAW**

COMES NOW, the Plaintiff, by and through its undersigned attorneys and presents its Requested Findings of Fact and Conclusions of Law as follows:

### I.

### REQUESTED FINDINGS OF FACT

1.    Plaintiff the Board of County Commissioners of Sandoval County, New Mexico (the "Board") is the governing body of Sandoval County, New Mexico (the "County") is, a duly created and existing political subdivision of the State of New Mexico.

2.    Defendant First Union Securities ("First Union"), is a Delaware corporation with its principal place of business in Chicago, Illinois and is the successor in interest to Everen Securities ("Everen") which was purchased by First Union in 1999.



3. Defendant Royce O. Simpson ("Simpson") at all times material hereto was an employed by Everen as the account executive assigned to the County Treasurer and transacted business with the County over the telephone from his office at Everen in Houston, Texas and made several personal visits to Sandoval County, New Mexico is pemritted by Section 6-10-10, NMSA 1978.

4. The Sandoval County Treasurer ( the "Treasurer") is required by law to invest public money that is not immediately needed for the operation of County Government.

5. The Sandoval County Commission adopted an investment policy in conformance with the statutes governing the investment of public money (Section 6-10-10- NMSA 1978) which among other things provided for investment of County funds in direct obligations of the United States Government.

6. The Treasurer is the County's investment officer and has the duty of investing the County's funds in accordance with the County investment policy and with state law.

7. In 1997, the Treasurer opened an account with Everen for the purpose of investing County funds not immediately necessary for governmental purposes.

8. Between July of 1997 and April of 1999, Defendants Simpson and Everen engaged in a pattern of recommending for sale and selling Treasury Strips to the Treasurer and in doing so sold approximately eighteen (18) Treasury Strips maturing up to twenty five years in the future with an aggregate principal amount in excess of $50,000,000.

9. Between July 31, 1997 and April 1, 1999, Defendants Simpson and Everen encouraged the treasurer to trade the account by engaging in a pattern of purchases and sales of Treasury Strips over a very short period of time.

2

10. In a series of telephone conversations with the Treasurer's Office originated by Simpson from his office in Houston, Texas between July 1997 and November 1998, Defendant Simpson omitted to disclose material facts concerning the purchase of Treasury Strips each time a Treasury Strip was sold to the County as more particularly described in paragraphs 12 through 29 below.

11. On or about July 31, 1997, Defendant Simpson omitted to inform the Treasurer or the County Commission of material facts concerning the Defendant's recommended purchase of a $2,560,000 8.75% treasury strip due on August 15, 2020 (the "7/31/97 Treasury Strip") and in particular that at the time of the recommendation and sale by Defendant Simpson, he omitted to inform the County it was not a suitable investment for the County. The material facts that at the time of the recommendation and sale to the County were omitted by Defendant Simpson were as follows:

    a. The 7/31/97 Treasury Strip would not earn interest during the period of the County's ownership.

    b. The 7/31/97 Treasury Strip was interest rate and market sensitive and the County's principal was at risk.

    c. That the County would have to hold the 7/31/97 Treasury Strip to maturity to receive the full principal value of the investment.

    d. That the County should not invest moneys that will be needed for government operations in the 7/31/97 Treasury Strip.

12. On or about August 27, 1997, Defendant Simpson omitted to inform the Treasurer or the County Commission of material facts concerning the Defendant's recommended purchase of a $605,000 8.00% treasury strip due on November 15, 2021 (the "8/27/97 Treasury Strip") and in

particular that at the time of the recommendation and sale by Defendant Simpson, he omitted to inform the County that it was not a suitable investment for the County. The material facts that were omitted by Defendant Simpson at the time of the recommendation and sale to the County were as follows:

  **a.** The 8/22/97 Treasury Strip would not earn interest during the period of the County's ownership.

  **b.** The 8/22/97 Treasury Strip was interest rate and market sensitive and the County's principal was at risk.

  **c.** That the County would have to hold the 8/22/97 Treasury Strip to maturity to receive the full principal value of the investment.

  **d.** That the County should not invest moneys that will be needed for government operations in the 8/22/97 Treasury Strip.

  **13.** On or about September 30, 1997, Defendant Simpson omitted to inform the Treasurer or the County Commission of material facts concerning the Defendant's recommended purchase of a $3,020,000 7.25% treasury strip due on August 15, 2022 (the "9/30/97 Treasury Strip") and in particular that at the time of the recommendation and sale by Defendant Simpson, he omitted to inform the County that it was not a suitable investment for the County. The material facts that were omitted by Defendant Simpson at the time of the recommendation and sale of the County were as follows:

  **a.** The 9/30/97 Treasury Strip would not earn interest during the period of the County's ownership.

4

**b.** The 9/30/97 Treasury Strip was interest rate and market sensitive and the County's principal was at risk.

**c.** That the County would have to hold the 9/30/97 Treasury Strip to maturity to receive the full principal value of the investment.

**d.** That the County should not invest moneys that will be needed for government operations in the 9/30/97 Treasury Strip.

**14.** On or about October 17, 1997, Defendant Simpson omitted to inform the Treasurer or the County Commission of material facts concerning the Defendant's recommended purchase of a $2,560,000 8.00% treasury strip due on November 15, 2021 (the "10/17/97 Treasury Strip") and in particular that at the time of the recommendation by Defendant Simpson, he omitted to inform the County that it was not a suitable investment for the County. The material facts that were omitted by Defendant Simpson at the time of the recommendation and sale to the County were as follows:

**a.** The 10/17/97 Treasury Strip would not earn interest during the period of the County's ownership.

**b.** The 10/17/97 Treasury Strip was interest rate and market sensitive and the County's principal was at risk.

**c.** That the County would have to hold the 10/17/97 Treasury Strip to maturity to receive the full principal value of the investment.

**d.** That the County should not invest moneys that will be needed for government operations in the 10/17/97 Treasury Strip.

15. On or about November 28, 1997, Defendant Simpson omitted to inform the Treasurer or the County Commission of material facts concerning the Defendant's recommended purchase of a $5,080,000 8.00% treasury strip due on November 15, 2021 (the "11/28/97 Treasury Strip") and in particular that at the time of the recommendation and sale by Defendant Simpson, he omitted to inform the County that it was not a suitable investment for the County. The material facts that were omitted by Defendant Simpson at the time of the recommendation and sale to the County were as follows:

    a. The 11/28/97 Treasury Strip would not earn interest during the period of the County's ownership.

    b. The 11/28/97 Treasury Strip was interest rate and market sensitive and the County's principal was at risk.

    c. That the County would have to hold the 11/28/97 Treasury Strip to maturity to receive the full principal value of the investment.

    d. That the County should not invest moneys that will be needed for government operations in the 11/28/97 Treasury Strip.

16. On or about December 30, 1997, Defendant Simpson omitted to inform the Treasurer or the County Commission of material facts concerning the Defendant's recommended purchase of a $6,000,000 7.625% treasury strip due on February 1, 2025 (the "12/30/97 Treasury Strip") and in particular that at the time of the recommendation and sale by Defendant Simpson he omitted to inform the County that it was not a suitable investment for the County. The material facts that were omitted by Defendant Simpson at the time of the recommendation and sale to the County were as follows:

**a.**     The 12/30/97 Treasury Strip would not earn interest during the period of the County's ownership.

**b.**     The 12/30/97 Treasury Strip was interest rate and market sensitive and the County's principal was at risk.

**c.**     That the County would have to hold the 12/30/97 Treasury Strip to maturity to receive the full principal value of the investment.

**d.**     That the County should not invest moneys that will be needed for government operations in the 12/30/97 Treasury Strip.

**17.**     On or about January 23, 1998, Defendant Simpson omitted to inform the Treasurer or the County Commission of material facts concerning the Defendant's recommended purchase of a $3,000,000 8.00% treasury strip due on November 15, 2021 (the "1/23/98-1 Treasury Strip") and in particular that at the time of the recommendation and sale by Defendant Simpson, he omitted to inform the County that it was not a suitable investment for the County. The material facts that were omitted by Defendant Simpson at the time of the recommendation and sale to the County were as follows:

**a.**     The 1/23/98-1 Treasury Strip would not earn interest during the period of the County's ownership.

**b.**     The 1/23/98-1 Treasury Strip was interest rate and market sensitive and the County's principal was at risk.

**c.**     That the County would have to hold the 1/23/98-1 Treasury Strip to maturity to receive the full principal value of the investment.

**d.**     That the County should not invest moneys that will be needed for government operations in the 1/23/98-1 Treasury Strip.

18. On or about January 23, 1998, Defendant Simpson omitted to inform the Treasurer or the County Commission of material facts concerning the Defendant's recommended purchase of a $6,000,000 7.625% treasury strip due on February 15, 2025 (the "1/23/98-2 Treasury Strip") and in particular that at the time of the recommendation and sale by Defendant Simpson, he omitted to inform the County that it was not a suitable investment for the County. The material facts that were omitted by Defendant Simpson at the time of the recommendation and ale to the County were as follows:

    a. The 1/23/98-2 Treasury Strip would not earn interest during the period of the County's ownership.

    b. The 1/23/98-2 Treasury Strip was interest rate and market sensitive and the County's principal was at risk.

    c. That the County would have to hold the 1/23/98-2 Treasury Strip to maturity to receive the full principal value of the investment.

    d. That the County should not invest moneys that will be needed for government operations in the 1/23/98-2 Treasury Strip.

19. On or about February 24, 1998, Defendant Simpson omitted to inform the Treasurer or the County Commission of material facts concerning the Defendant's recommended purchase of a $5,000,000 7.625% treasury strip due on November 15, 2021 (the "2/24/98 Treasury Strip") and in particular that at the time of the recommendation and sale by Defendant Simpson, he omitted to inform the County that it was not a suitable investment for the County. The material facts that were omitted by Defendant Simpson at the time of the recommendation and sale to the County at the time of the recommendation and sale were as follows:

**a.** The 2/24/98 Treasury Strip would not earn interest during the period of the County's ownership.

**b.** The 2/24/98 Treasury Strip was interest rate and market sensitive and the County's principal was at risk.

**c.** That the County would have to hold the 2/24/98 Treasury Strip to maturity to receive the full principal value of the investment.

**d.** That the County should not invest moneys that will be needed for government operations in the 2/24/98 Treasury Strip.

**20.** On or about March 31, 1998, Defendant Simpson omitted to inform the Treasurer or the County Commission of material facts concerning the Defendant's recommended purchase of a $4,390,000 8.00% treasury strip due on November 15, 2021 (the "3/31/98 Treasury Strip") and in particular that at the time of the recommendation and sale by Defendant Simpson, he omitted to inform the County that it was not a suitable investment for the County. The material facts that were omitted by Defendant Simpson at the time of the recommendation and sale to the County were as follows:

**a.** The 3/31/98 Treasury Strip would not earn interest during the period of the County's ownership.

**b.** The 3/31/98 Treasury Strip was interest rate and market sensitive and the County's principal was at risk.

**c.** That the County would have to hold the 3/31/98 Treasury Strip to maturity to receive the full principal value of the investment.

**d.** That the County should not invest moneys that will be needed for government operations in the 3/31/98 Treasury Strip.

9

**21.** On or about April 30, 1998, Defendant Simpson omitted to inform the Treasurer or the County Commission of material facts concerning the Defendant's recommended purchase of a $2,000,000 8.75% treasury strip due on August 15, 2020 (the "4/30/98 Treasury Strip") and in particular that at the time of the recommendation and sale by Defendant Simpson, he omitted to inform the County that it was not a suitable investment for the County. The material facts that were omitted by Defendant Simpson at the time of the recommendation and sale of the County were as follows:

   **a.** The 4/30/98 Treasury Strip would not earn interest during the period of the County's ownership.

   **b.** The 4/30/98 Treasury Strip was interest rate and market sensitive and the County's principal was at risk.

   **c.** That the County would have to hold the 4/30/98 Treasury Strip to maturity to receive the full principal value of the investment.

   **d.** That the County should not invest moneys that will be needed for government operations in the 4/30/98 Treasury Strip.

**22.** On or about June 17, 1998, Defendant Simpson omitted to inform the Treasurer or the County Commission of material facts concerning the Defendant's recommended purchase of a $7,000,000 7.625% treasury strip due on February 15, 2025 (the "6/17/98 Treasury Strip") and in particular that at the time of the recommendation and sale by Defendant Simpson, he omitted to inform the County that it was not a suitable investment for the County. The material facts that were omitted by Defendant Simpson at the time of the recommendation and sale of the county were as follows:

    **a.**    The 6/17/98 Treasury Strip would not earn interest during the period of the County's ownership.

    **b.**    The 6/17/98 Treasury Strip was interest rate and market sensitive and the County's principal was at risk.

    **c.**    That the County would have to hold the 6/17/98 Treasury Strip to maturity to receive the full principal value of the investment.

    **d.**    That the County should not invest moneys that will be needed for government operations in the 6/17/98 Treasury Strip.

**23.**    On or about July 13, 1998, Defendant Simpson omitted to inform the Treasurer or the County Commission of material facts concerning the Defendant's recommended purchase of a $5,000,000 7.625% treasury strip due on February 15, 2025 (the "7/13/98 Treasury Strip") and in particular that at the time of the recommendation and sale by Defendant Simpson, he omitted to inform the County that it was not a suitable investment for the County. The material facts that were omitted by Defendant Simpson at the time of the recommendation and sale to the County were as follows:

    **a.**    The 7/13/98 Treasury Strip would not earn interest during the period of the County's ownership.

    **b.**    The 7/13/98 Treasury Strip was interest rate and market sensitive and the County's principal was at risk.

    **c.**    That the County would have to hold the 7/13/98 Treasury Strip to maturity to receive the full principal value of the investment.

    **d.**    That the County should not invest moneys that will be needed for government operations in the 7/13/98 Treasury Strip.

24. On or about July 28, 1998, Defendant Simpson omitted to inform the Treasurer or the County Commission of material facts concerning the Defendant's recommended purchase of a+ $6,000,000 8.00% treasury strip due on November 15, 2021 (the "7/28/98 Treasury Strip") and in particular that at the time of the recommendation and by Defendant Simpson, he omitted to inform the County that it was not a suitable investment for the County. The material facts that were omitted by Defendant Simpson at the time of the recommendation and sale to the County were as follows:

    **a.** The 6/28/98 Treasury Strip would not earn interest during the period of the County's ownership.

    **b.** The 6/28/98 Treasury Strip was interest rate and market sensitive and the County's principal was at risk.

    **c.** That the County would have to hold the 6/28/98 Treasury Strip to maturity to receive the full principal value of the investment.

    **d.** That the County should not invest moneys that will be needed for government operations in the 6/28/98 Treasury Strip.

25. On or about August 31, 1998, Defendant Simpson omitted to inform the Treasurer or the County Commission of material facts concerning the Defendant's recommended purchase of a $6,000,000 8.00% treasury strip due on November 15, 2021 (the "8/31/98 Treasury Strip") and in particular that at the time of the recommendation and sale by Defendant Simpson, he omitted to inform the County that it was not a suitable investment for the County. The material facts that were omitted by Defendant Simpson at the time of the recommendation and sale to the County were as follows:

    **a.** The 8/31/98 Treasury Strip would not earn interest during the period of the County's ownership.

**b.** The 8/31/98 Treasury Strip was interest rate and market sensitive and the County's principal was at risk.

**c.** That the County would have to hold the 8/31/98 Treasury Strip to maturity to receive the full principal value of the investment.

**d.** That the County should not invest moneys that will be needed for government operations in the 8/31/98 Treasury Strip.

**26.** On or about October 8, 1998, Defendant Simpson omitted to inform the Treasurer or the County Commission of material facts concerning the Defendant's recommended purchase of a $6,400,000 8.75% treasury strip due on August 15, 2020 (the "3/31/98 Treasury Strip") and in particular that at the time of the recommendation and sale by Defendant Simpson, he omitted to inform the County that it was not a suitable investment for the County. The material facts that were omitted by Defendant Simpson at the time of the recommendation and sale to the County were as follows:

**a.** The 10/8/98 Treasury Strip would not earn interest during the period of the County's ownership.

**b.** The 10/8/98 Treasury Strip was interest rate and market sensitive and the County's principal was at risk.

**c.** That the County would have to hold the 10/8/98 Treasury Strip to maturity to receive the full principal value of the investment.

**d.** That the County should not invest moneys that will be needed for government operations in the 10/8/98 Treasury Strip.

13

**27.** On or about October 30, 1998, Defendant Simpson omitted to inform the Treasurer or the County Commission of material facts concerning the Defendant's recommended purchase of a $4,770,000 treasury strip due on November 15, 2024 (the "10/30/98 Treasury Strip") and in particular that at the time of the recommendation and sale by Defendant Simpson, he omitted to inform the County that it was not a suitable investment for the County. The material facts that were omitted by Defendant Simpson at the time of the recommendation and sale to the County were as follows:

**a.** The 10/30/98 Treasury Strip would not earn interest during the period of the County's ownership.

**b.** The 10/30/98 Treasury Strip was interest rate and market sensitive and the County's principal was at risk.

**c.** That the County would have to hold the 10/30/98 Treasury Strip to maturity to receive the full principal value of the investment.

**d.** That the County should not invest moneys that will be needed for government operations in the 10/30/98 Treasury Strip.

**28.** On or about November 23, 1998, Defendant Simpson omitted to inform the Treasurer or the County Commission of material facts concerning the Defendant's recommended purchase of a $4,140,000 7.625% treasury strip due on February 15, 2025 (the "11/23/98 Treasury Strip") and in particular that at the time of the recommendation and sale by Defendant Simpson, he omitted o inform the County that it was not a suitable investment for the County. The material facts that were omitted by Defendant Simpson at the time of the recommendation and sale to the County were as follows:

      **a.**      The 11/23/98 Treasury Strip would not earn interest during the period of the County's ownership.

      **b.**      The 11/23/98 Treasury Strip was interest rate and market sensitive and the County's principal was at risk.

      **c.**      That the County would have to hold the 11/23/98 Treasury Strip to maturity to receive the full principal value of the investment.

      **d.**      That the County should not invest moneys that will be needed for government operations in the 11/23/98 Treasury Strip.

**29.**      The County Investment Policy in effect between 1992 and 2000 did not permit the sale of the Treasury Strips by Everen to the County because the purchase of the Treasury Strips violated the Prudent Man Rule.

**30.**      The Treasurer of Sandoval County does not have unlimited authority to invest County money.

**31.**      Cheryl Tucker Padilla was not informed by Defendant Simpson that the County's principal was at risk and the Treasury Strips were market rate sensitive at the time Defendants sold the Treasury Strips to the County.

**32.**      Defendants are responsible for the County's losses on Treasury Strips after February 6, 1999 because Defendants sold unsuitable securities to Plaintiff.

**33.**      The County would have earned a minimum of $220,071.43 more if the County funds had been invested in interest bearing shorter term investments.

**34.**      The County paid commissions to Everen in excess of $500,000 between July 1, 1997 and December 31, 1998 which overcharged the County in excess of $400,000.

**35.** Cheryl Tucker Padilla's employment as the Sandoval County Investment Officer was involuntarily terminated.

**36.** Substantially all of the County's operating funds were invested in Long Term Treasury Strips in 1999 and 2000.

**37.** Defendant Royce O. Simpson did not make required disclosures omitted at the time the Treasury Strips were sold by Defendants to the County.

**38.** Had the County's money been invested in interest bearing U.S. treasury bonds or notes in shorter maturities, the County would have earned significant investment income in the minimum amount of $220,000 between July 31, 1997 and April 1, 1999.

**39.** The actual losses in the Treasurer's account for the period of the time the account was maintained are in excess of $625,000 which represents the actual loss in investment earnings of a minimum of $220,000, plus $405,000 of commission overcharges plus, statutory interest of 8.75%, plus costs and attorney's fees.

**40.** In December of 1999 the County engaged the services of an independent financial consultant to review the Treasurer's investments and on January 15, 2000, the County Commission was presented with a report of First Financial Advisors, LLC which for the first time informed the County Commission of the full nature and extent of the Treasurer's purchases and sales of Treasury Strips and the actual and potential losses suffered by the County due to the purchase of the securities by the Treasurer from Defendants Everen and Simpson.

### PLAINTIFF'S REQUESTED CONCLUSIONS OF LAW

**1.** Defendants failure to disclose material facts to the Plaintiff at the time of the sale of the Treasury Strips to Plaintiff violates section 10 of the Securities Act of 1934 and Rule 10b-5 (17 C.F.R.), Section 240.10b-5.

2. Defendant's failure to disclose material facts to the Plaintiff at the time of the sale of the Treasury Strips to the Plaintiff violates the New Mexico Securities Act of 1986, Section 58-13B-30 NMSA 1978 as amended.

3. The Treasury Strips sold by Defendants to Plaintiff between July of 1997 and April of 1998 were not suitable investments for Plaintiff.

4. Defendants were under a fiduciary duty to Plaintiff not to sell unsuitable securities to Plaintiff and in the alternative, Defendants were under a fiduciary duty to sell only suitable securities to Plaintiff

5. Defendants breached their fiduciary to Plaintiff to sell only suitable investments to Plaintiff.

6. Defendant First Union Securities, as successor in interest to Everen Securities, failed to adequately supervise Defendant Simpson because it permitted him to sell over $50,000,000 of unsuitable Treasury Strips to Plaintiff.

7. Defendants are jointly and severally liable to Plaintiff for interest losses in the minimum amount of $220,000; excessive commission charges of $405,000, statutory interest on both the interest losses and commission overcharges at the statutory rate of 8.75% plus costs and reasonable attorneys fees for their violations of Section 10 of the Securities Act of 1934, Rule 10b-5 and Section 58-13B-30 NMSA 1978 and as provided in Section 58-13B-40 NMSA 1978.

8. Defendants are liable to Plaintiff for their breach of their fiduciary duty to Plaintiff in the minimum amount of $220,000 of interest losses and $405,000 in commission overcharges.

9. Defendant First Union Securities is solely liable to Plaintiff for failure to supervise Defendant Simpson in the minimum amount of $220,000 of interest losses and $405,000 in commission overcharges.

10. Plaintiff is entitled to judgment against Defendants in the minimum amount of $220,000 in interest losses, $405,000 in commission overcharges, statutory interest on the foregoing at 8.75% plus reasonable attorneys fees and costs of this action.

Respectfully submitted

HUGHES & STRUMOR, LTD. CO.
320 GOLD AVENUE S.W.
ALBUQUERQUE, NEW MEXICO 87102

and

JOHN WAYNE HIGGINS & ASSOCIATES
515 ROMA N.W.
ALBUQUERQUE, NEW MEXICO 87102

BY: _____
ROBERT M. STRUMOR, ESQ.
HUGHES & STRUMOR, LTD. CO.