IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

BOARD OF COUNTY COMMISSIONERS
OF SANDOVAL COUNTY, NEW MEXICO,

    Plaintiff,

v.    Civil Cause No. CIV 01-0120 PK/WWD

FIRST UNION SECURITIES, as successor in interest
to Everen Securities; and ROYCE O. SIMPSON,

    Defendants.

## PARTIES' STIPULATED FINDINGS OF FACT

COME NOW Plaintiff Board of County Commissioners of Sandoval County and Defendants First Union Securities, Inc. and Royce O. Simpson (collectively "Defendants"), and respectfully submit the following Stipulated Findings of Fact.

1. The Board of County Commissioners of Sandoval County, New Mexico (the "Board") is the governing body of Sandoval County, New Mexico (the "County") and is a duly created and existing political subdivision of the State of New Mexico.

2. Josephine Montoya is the duly elected County Treasurer (the "Treasurer") of Sandoval County, New Mexico.

3. First Union Securities ("First Securities") is a Delaware Corporation and is the successor in interest to Everen Securities ("Everen"). Royce O. Simpson ("Simpson") was at times material hereto employed by Everen as an account representative and had responsibility for the County's account while at Everen.



4.  Exhibit A to the First Amended Complaint is a true and correct copy of the institutional new account form for this account.

5.  On or about July 31, 1997, the County purchased a United States Treasury Bond due on August 15, 2020. The bond is known in the securities industries as a "Treasury Strip."

6.  Between July 1997 and April 1999, approximately 18 transactions occurred involving the purchase by the County of Treasury Strips with an aggregate principal amount in excess of $50,000,000. The Treasury Strips matured in up to 25 years in the future.

7.  Sales involving Treasury Strips occurred in the county's account between January 2, 1998 and December 28, 1998.

8.  The County was investing in Treasury Strips before it began purchasing Treasury Strips through Royce Simpson.

9.  The County's records indicate that it was investing in Treasury Strips by at least January 28, 1991 (*see* Document No. 009389).

10. The County has regularly purchased Treasury STRIPS for its investment portfolios since at least 1991, well before its dealings with Defendants.

11. For periods prior to January 1991, the County does not know, and cannot determine, through what broker and brokerage house it purchased Treasury Strips, or when it began such purchases.

12. The County purchased Treasury STRIPS from 1991 through 1999 through a variety of different brokers. During 1997 and 1998, when Mr. Simpson was associated

with Everen, the County was also purchasing STRIPS through another firm and a different individual broker.

13. The County does not know, and cannot determine, what advice it may have received from any source regarding the suitability of investments in Treaury Strips prior to October 27, 1992.

14. The County adopted a formal Investment Policy effective September 21, 1992.

15. Under the Investment Policy, which was in effect throughout the period at issue in this case, the Treasurer of Sandoval County "has ultimate authority over the investment of public funds as outlined in this policy." The Treasurer's office also adopted formal Investment Procedures under which "[i]nvestments are to be made by the Investment Officer and authorized by the Treasurer and the Deputy Treasurer."

16. On January 2, 1992, the County hired Cheryl Tucker as its Investment Officer. From that date until her termination in July 2000, Ms. Tucker functioned as the County's Investment Officer.

17. At the time the County opened its account with Everen, the Treasurer executed a Trading Authorization in which the County certified that Ms. Tucker was "authorized and empowered to purchase, sell, assign, deal in or transfer securities . . . on our behalf with your firm."

18. Ms. Tucker made each of the trades at issue here on behalf of the County and was the County's duly authorized agent for each of the transactions.

19. Mr. Simpson left the employ of Everen in January 1999. On February 6, 1999, the County transferred all securities held at Everen, including two Treasury STRIPS then held in the account, to another brokerage firm.

20. On March 9, 1999, the New Mexico State Auditor hand delivered a letter to the County following the Auditor's review of the County's audit work papers for the year ending June 30, 1998. The letter "noted that the County participates in certain investment practices that warrant additional evaluation," and requested certain documents (including investment policies, Board of Finance meeting minutes, broker contracts and broker monthly transaction statements). The County provided the requested information.

21. By letter dated July 16, 1999, the New Mexico State Auditor faxed a "draft" Special Report to the County and requested a "response to the findings" within ten days. The draft Special Report concluded, among other things, that the County's investment in Treasury STRIPS was not only contrary to the County's Investment Policy, but was illegal under New Mexico law. In the draft Special Report, the State Auditor recommended that the "County Treasurer immediately cease and desist [these] speculative, illegal trading activities."

22. On August 3, 1999, the County Manager, Debbie Hays, sent a packet of information concerning the County's investments to a third-party broker who had not done business with the County. She testified that she did so to get an outsider's view regarding the concerns being raised by the State Auditor.

23. By letter dated August 6, 1999, the County responded to the State Auditor and defended the County's investment practices. The letter, signed by the Treasurer, indicated that the Treasurer had "reviewed the investment records, which were audited by

your staff, with the County Manager and our Investment Officer," prior to formulating the County's response.

24. As a result of the concerns expressed by the State Auditor, the County Manager met sometime in August or September 1999, with Ms. Tucker, the Investment Officer, and Joseph Lang, the then-chair of the Sandoval County Board of Commissioners, to discuss the County's investment practices.

25. On August 16, 1999, the Sandoval County Board of Finance met, at which time the Treasurer requested the Board "to review the investment policy and make any changes to the existing policy."

26. On August 25, 1999, the State Auditor issued his final Special Audit Report, which was directed to the County Treasurer and the members of the Board of County Commissioners. The final Special Audit Report again concluded that the County engaged in investment practices "that violate state law and good internal controls."

27. In this case, Plaintiffs challenge a total of eighteen STRIP purchases made by the County through Everen between February 26, 1997 and November 23, 1998. Sixteen of those STRIPS were sold by the County while it still had its account with Everen; the County made money on the sixteen trades completed through Everen. The County made a total of at least $271,298.171 on its purchases and corresponding sales made through Everen.

28. Two STRIPS purchased by the County in October 1998 were transferred to another brokerage firm on February 6, 1999.

Respectfully submitted,

HUGHES & STRUMOR, LTD. CO.

By <u>Telephonically approved 1-14-02</u>
    Robert Strumor, Esq.
    Hughes & Strumor, Ltd. Co.
    P.O. Box 1610
    Albuquerque, NM 87103

and

John W. Higgins, Esq.
515 Roma, N.W.
Albuquerque, NM 87102

*Attorneys for Plaintiff*

AND

ROTHGERBER JOHNSON & LYONS LLP

Frederick J. Baumann, Esq.
Christopher T. Sullivan, Esq.
1200 17th Street, Suite 3000
Denver, Colorado 80202
Telephone: (303) 623-9000

and

KELEHER & MCLEOD, P.A.

By /s/ Melanie Frassanito
W. Spencer Reid
Melanie L. Frassanito
P.O. Drawer AA
Albuquerque, New Mexico 87103
Telephone: (505) 346-4646
Telefax: (505) 346-1370

*Attorneys for Defendants*

MLF0757

-6-